IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

──────────────────────────────────

JOSE C.,

                                    Plaintiff,              Civil Action No.
                                                           3:19-CV-0418 (DEP)

        v.

NANCY A. BERRYHILL, Commissioner of Social
Security,[1]

                                    Defendant.

──────────────────────────────────

APPEARANCES:                        OF COUNSEL:

FOR PLAINTIFF

LACHMAN, GORTON LAW FIRM            PETER A. GORTON, ESQ.
Attorneys at Law
1500 Main Street
Endicott, NY 13761

FOR DEFENDANT

HON. GRANT C. JAQUITH               AMELIA STEWART, ESQ.
United States Attorney              Special Assistant U.S. Attorney
P.O. Box 7198
100 S. Clinton Street
Syracuse, NY 13261-7198

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

───────────────────

[1]     Plaintiff's complaint named Nancy A. Berryhill, in her capacity as the Acting
Commissioner of Social Security, as the defendant. On June 4, 2019, Andrew Saul
took office as Social Security Commissioner. He has therefore been substituted as the
named defendant in this matter pursuant to Rule 25(d)(1) of the Federal Rules of Civil
Procedure, and no further action is required in order to effectuate this change. *See* 42
U.S.C. § 405(g).

## ORDER

Currently pending before the court in this action, in which plaintiff seeks judicial review of an adverse administrative determination by the Commissioner of Social Security, pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are cross-motions for judgment on the pleadings.[2] Oral argument was heard in connection with those motions on August 20, 2020, during a telephone conference conducted on the record. At the close of argument I issued a bench decision in which, after applying the requisite deferential review standard, I found that the Commissioner's determination resulted from the application of proper legal principles and is supported by substantial evidence, providing further detail regarding my reasoning and addressing the specific issues raised by the plaintiff in this appeal.

After due deliberation, and based upon the court's oral bench decision, which has been transcribed, is attached to this order, and is incorporated herein by reference, it is hereby

ORDERED, as follows:

---

[2] This matter, which is before me on consent of the parties pursuant to 28 U.S.C. § 636(c), has been treated in accordance with the procedures set forth in General Order No. 18. Under that General Order once issue has been joined, an action such as this is considered procedurally, as if cross-motions for judgment on the pleadings had been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

    1)     Defendant's motion for judgment on the pleadings is GRANTED.

    2)     The Commissioner's determination that the plaintiff was not disabled at the relevant times, and thus is not entitled to benefits under the Social Security Act, is AFFIRMED.

    3)     The clerk is respectfully directed to enter judgment, based upon this determination, DISMISSING plaintiff's complaint in its entirety.

David E. Peebles
U.S. Magistrate Judge

Dated:    August 28, 2020
            Syracuse, NY

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
------------------------------------------------------x
JOSE C.,

                                        Plaintiff,


-v-                                     3:19-CV-418


COMMISSIONER OF SOCIAL SECURITY,

                                        Defendant.
------------------------------------------------------x


**TRANSCRIPT OF PROCEEDINGS**
**BEFORE THE HONORABLE DAVID E. PEEBLES**
August 20, 2020
100 South Clinton Street, Syracuse, New York



For the Plaintiff:
(Appearance by telephone)

     LACHMAN & GORTON LAW OFFICE
     P.O. Box 89
     1500 East Main Street
     Endicott, New York 13761
     BY:  **PETER A. GORTON, ESQ.**

For the Defendant:
(Appearance by telephone)

     SOCIAL SECURITY ADMINISTRATION
     625 JFK Building
     15 New Sudbury Street
     Boston, Massachusetts 02203
     BY:  **AMELIA STEWART, ESQ.**




*Hannah F. Cavanaugh, RPR, CRR, CSR, NYACR, NYRCR*
*Official United States Court Reporter*
*100 South Clinton Street*
*Syracuse, New York 13261-7367*
*(315) 234-8545*

1          (The Court and all parties present by telephone.

2    Time noted:  11:10 a.m.)

3          THE COURT:  I have before me a challenge to a finding

4    by the Commissioner of Social Security that plaintiff was not

5    disabled at the relevant times and, therefore, ineligible for

6    benefits for which he applied.  The challenge is brought

7    pursuant to 42, United States Code, Sections 405(g) and

8    1383(c)(3).

9          The background is as follows:  Plaintiff was born in

10   February of 1963.  He is currently 57 years of age.  He was 50

11   years old at the alleged onset of his disability, which he

12   claims to be September 2, 2013.  Plaintiff stands 5'7" in height

13   and weighs 165 pounds.  He lives in Binghamton where he moved in

14   April of 2015.  He lives in a former hotel that has been

15   converted and houses primarily persons with criminal convictions

16   and sex offenders.  It is unclear what the extent of his formal

17   education was.  It appears that he may have dropped out during

18   or after 9th grade.  He may also have been in special education

19   classes.  He reads at a second grade level, but is able to add

20   and subtract.  Plaintiff does not have a driver's license.  He

21   relies on public transportation and his bicycle for getting

22   around.

23          Plaintiff, in terms of his work, proves to be a

24   fairly poor historian and it is difficult to piece together

25   precisely when and where he worked.  He's worked as a temporary

1  laborer, he has worked as a grocery stock clerk, he has worked

2  as ad installer placing advertisements on buses, and he has

3  worked as a delivery person for a florist.  He ran into

4  difficulties at one of his positions because he withheld his

5  criminal conviction from his application.  He left early and did

6  not return and has experienced assaults by coworkers at one or

7  more of his places of employment.

8          Physically, plaintiff is not making any claims that

9  his physical conditions have imposed limitations on his ability

10 to perform work functions.  The focus of plaintiff's claim is on

11 his mental condition, which, as the Administrative Law Judge

12 noted, has been variously described and diagnosed.  Among other

13 things, he's been found to have suffered from major depressive

14 disorder, a generalized anxiety disorder, and impulse control

15 disorder.  There is indication that he may have been diagnosed

16 at one point in time with posttraumatic stress disorder, or

17 PTSD, a panic disorder with the beginning of agoraphobia, a

18 learning disability, and possibly bipolar disorder, as well as

19 pedophilia.

20         Plaintiff has obtained treatment through various

21 sources, including the Lourdes Center for Mental Health where he

22 sees therapist Matthew Scott and Psychiatric Nurse Practitioner

23 Jeanette Lee.  In terms of his general medical needs, he sees

24 Dr. John Caruso at Lourdes Center for Family Health and has

25 since June of 2017.  There was an incident on August 12, 2015,

JOSE C. v. COMMISSIONER OF SOCIAL SECURITY                4

1   when, at the suggestion of his healthcare providers, plaintiff

2   was transported to an emergency room by ambulance.  He, however,

3   left against medical advice prior to being seen by any doctors.

4   He was sent by Dr. Trevor Litchmore on that occasion.

5             In terms of activities of daily living, plaintiff is

6   able to groom, use public transportation, watch television.  He

7   attends church weekly, he shops, does laundry, cooks, he rides

8   his bicycle, and there was some indication that he may play

9   handball.

10            Plaintiff has been prescribed several medications

11  over time, including Seroquel, Duloxetine, Paxil, Remeron,

12  Gemfibrozil, Ziprasidone, Cyclobenzaprine, Geodon, and Lexapro.

13            Plaintiff has a conviction from March of 2005 for

14  molesting an eight-year-old stepdaughter.  He is a registered

15  sex offender.  There's also apparently a prior conviction for

16  possession of crack cocaine and plaintiff is a recovering or

17  recovered addict who has in the past used heroin, crack,

18  marijuana, and methamphetamines.  Plaintiff is a heavy smoker.

19  He smokes between one and two packs of cigarettes daily.

20            The procedural history for this matter is as follows:

21  Plaintiff applied for Title II and Title XVI benefits on

22  August 18, 2015, as I indicated, alleging an onset date of

23  September 2, 2013.  He claims disability based on major

24  depressive disorder, general anxiety disorder, pedophilia, panic

25  disorder, and being illiterate.  A hearing was conducted on

1   February 6, 2018, by Administrative Law Judge Jennifer Gale

2   Smith to address plaintiff's claims.  At that hearing, a

3   vocational expert testified, as well as the plaintiff.  On

4   March 26, 2018, ALJ Smith issued a decision that was unfavorable

5   to the plaintiff.  On February 12, 2019, that became a final

6   determination of the agency when the Social Security

7   Administration Appeals Council denied plaintiff's application

8   for a review.  In doing so, the Social Security Appeals Council

9   accepted newly submitted evidence, but determined that it would

10  not alter the outcome and, therefore, denied review.  This

11  matter was commenced on April 8, 2019, and is timely.

12          In her decision, ALJ Smith applied the familiar

13  five-step sequential test for determining disability, first

14  noting that plaintiff's insured status expired on September 30,

15  2013.  At step one, the Administrative Law Judge concluded

16  plaintiff had not engaged in substantial gainful activity since

17  September 2, 2013.

18          At step two, she concluded that plaintiff does suffer

19  from severe impairments that impose more than minimal

20  limitations on his ability to perform basic work functions,

21  including impulse control disorder, depressive disorder, and

22  anxiety disorder.  In doing so, she explained at page 14 of the

23  Administrative Transcript that she understood that plaintiff's

24  mental condition had been variously described and diagnosed, but

25  in the end, it was not important what label was placed on it,

1  but rather what the limitations associated with it and the

2  symptoms were, and she made it clear that she had considered all

3  of the symptoms reported concerning plaintiff's mental

4  condition.

5          At step three, ALJ Smith concluded that plaintiff's

6  condition does not meet or medically equal any of the listed

7  presumptively disabling conditions set forth in the

8  Commissioner's regulations, specifically considering listings

9  12.04, 12.06, 12.08, 12.11, and 12.05.

10          After determining plaintiff's residual functional

11  capacity, which we will discuss in more depth momentarily, at

12  step four, Administrative Law Judge Smith concluded that

13  plaintiff is capable of performing his past relevant work as an

14  ad material distributor, which, according to the vocational

15  expert, constitutes light work with an SVP of 2.

16          At step five, as an alternative basis for her

17  decision of no disability, after consulting with the vocational

18  expert and posing a hypothetical that mirrored the residual

19  functional capacity finding, ALJ Smith concluded that plaintiff

20  is capable of performing as a kitchen helper, a cleaner, a

21  warehouse worker, a photocopy machine operator, and a

22  cleaner/housekeeping and, therefore, found that plaintiff was

23  not disabled at the relevant times.

24          The Court's task in this case is limited.  I must

25  determine whether correct legal principles were applied and the

1  resulting determination is supported by substantial evidence.

2  As the Second Circuit Court of Appeals noted in *Brault v. Social*

3  *Security Administration,* 683 F.3d 443 from 2012, the substantial

4  evidence test is a stringent test akin to and even more

5  stringent than clearly erroneous.  Substantial evidence, of

6  course, is defined as such relevant evidence as a reasonable

7  mind might accept as adequate to support a conclusion.  The

8  Second Circuit noted in *Brault* that under the standard, when the

9  Administrative Law Judge finds a fact, that fact can be rejected

10  only if a reasonable factfinder would have to conclude

11  otherwise.

12          In this case, plaintiff raises five basic contentions

13  arguing that the residual functional capacity finding of the

14  Administrative Law Judge is not supported and failed to

15  recognize the extent of plaintiff's mental condition and the

16  triggers associated with those being workplace stress.

17  Secondly, he argues that the opinions of Dr. Moore and Dr. Brown

18  were not properly weighed and evaluated by the Administrative

19  Law Judge and that she substituted her views for the opinions of

20  those two physicians.  Thirdly, plaintiff argues that the

21  failure to include any limitation on plaintiff's schedule to

22  accommodate the limitations on his ability to stay on task and

23  maintain attendance is not supported.  Fourth, he argues that

24  the Social Security Administration Appeals Council should have

25  considered the new evidence found and that it would reasonably

 1  likely change the outcome.  And five, the plaintiff argues that

 2  the step four and step five analysis is flawed.

 3          As a backdrop, I note that it is plaintiff's burden

 4  through step four, under *Poupore,* to establish limitations that

 5  preclude him from working.  In this case, the Administrative Law

 6  Judge concluded that notwithstanding his conditions, plaintiff

 7  retains the ability to work at all exertional levels subject to

 8  certain nonexertional limitations, including that the claimant

 9  should not have to read, write, or perform mathematical

10  operations as part of his job duties, the claimant should work

11  at simple routine and repetitive tasks, the claimant should work

12  in a low stress job defined as occasional decisionmaking,

13  occasional judgment required, and occasional changes in the work

14  setting, the claimant should work at goal-oriented work rather

15  than production pace rate work, the claimant should have

16  occasional contact with coworkers, supervisors, and the public.

17  That appears at pages 16 and 17 of the Administrative

18  Transcript.

19          Obviously, pivotal to any determination is an RFC

20  finding which represents a finding of the range of tasks the

21  plaintiff is capable of performing notwithstanding the

22  impairments in question.  When determining the residual

23  functional capacity, or RFC, an Administrative Law Judge must

24  consider all of the relevant medical and other evidence.  After

25  doing so, the ALJ must assess the plaintiff's exertional

1   capabilities, as well as nonexertional limitations, including

2   impairments that could result in postural or manipulative

3   limitations.  And of course, an RFC determination must be

4   supported by substantial evidence.

5            Plaintiff has indicated he only challenges the

6   medical component of the residual functional capacity and

7   believes, first, that the plaintiff's triggers of his mental

8   symptoms were not properly considered.  The Administrative Law

9   Judge at page 18 relied heavily on plaintiff's robust list of

10  activities of daily living.  Especially relevant was his ability

11  to attend church on a regular basis, his ability to take public

12  transportation, the fact that he went to a Super Bowl party

13  where he was around other people.  This is a similar case to

14  *James N. v. Commissioner of Social Security*, 2020 WL 1140498

15  from the Northern District of New York, 2020, with a very

16  similar set of activities of daily living, and that case was

17  found to support the residual functional capacity.

18           And in that regard, this is a different case than

19  *Miller v. Colvin*, 122 F. Supp. 3d 23 from the Western District

20  of New York, a case relied on by the plaintiff.  The activities

21  of daily living were really fairly mundane.  The Court in that

22  case considered that, generally speaking, activities of daily

23  living include things like cleaning, shopping, cooking, and so

24  forth.  In this case, when you are dealing with someone who

25  claims the inability to be around people, it is very relevant,

1   the ability to go to church on a regular basis, to take public

2   transportation, to go a Super Bowl party.  So I find that this

3   is more akin to the *James N.* case than the *Miller* case.  I also

4   note that plaintiff admitted at page 401 that he was looking for

5   work.

6          The Administrative Law Judge also properly relied on

7   benign mental status exams at page 18, and those are cited in

8   the record at 405 from December 2015, 443 to 444 from

9   March 2017, 449 to 450 from April of 2017, 454 to 455 from May

10  of 2017, 459 to 460 from July of 2017, 464 to 465 from -- if I

11  can read my notes correctly -- September 2017, 469 to 470

12  September 2017 -- I guess the earlier one was August, I'm

13  sorry -- 474 to 475 from October 2017, 479 to 480 from November

14  of 2017 -- that can't be right -- 489 to 490 from June of 2017,

15  494 to 495 from August of 2017.  She also relied on the fact

16  that plaintiff stated at page 406 that therapy had helped him a

17  great deal.  At 454, it appeared that he was doing well on his

18  medications.  At 489, he made a statement that I am okay.

19         The reliance on mental status exams is supported by

20  and approved by this Court in *Cuenca v. Commissioner of Social*

21  *Security*, 2016 WL 2865726 from the Northern District of New

22  York, April of 2016, in a report and recommendation by

23  Magistrate Judge William Carter that was approved by Chief Judge

24  Glenn Suddaby at 2016 WL 2858858.

25         The Administrative Law Judge also properly relied on

1    portions of the opinions of Dr. Moore and Dr. Brown.  The

2    Administrative Law Judge acknowledged plaintiff's workplace

3    fears and fears of being around people in general when

4    summarizing his contentions at page 17.  To some degree, that

5    has been accommodated and taken into consideration in the

6    residual functional capacity, and specifically in the portion

7    that limited plaintiff to occasional contact with coworkers,

8    supervisors, and the public.

9            Once again, I think it was reasonable to rely on all

10   of these to support the residual functional capacity, which I

11   conclude is supported by substantial evidence.  If I were

12   deciding the case, I may or may not have weighed the evidence in

13   the same way the Administrative Law Judge did, but, of course,

14   that is not my function to reweigh the evidence, only to

15   determine whether substantial evidence supports the

16   determination.

17           The next argument concerns the weighing of the

18   opinions of Dr. Moore, for one.  Dr. Moore, after examining the

19   plaintiff in October of 2015, made the following medical source

20   statement:  The claimant shows mild limitation in regard to

21   following and understanding simple directions and instructions

22   and performing simple tasks independently.  He has moderate

23   limitation in regard to maintaining attention and concentration,

24   moderate to marked limitation regarding learning new tasks and

25   performing complex tasks independently, moderate limitation in

1   regard to appropriately dealing with stress, relating adequately

2   to others, and moderate to marked limitation with regard to

3   making appropriate work decisions and maintaining a regular work

4   schedule.  The Administrative Law Judge considered that opinion

5   at page 18 and gave it partial weight.

6          The Administrative Law Judge noted that plaintiff was

7   examined by Dr. Moore, she acknowledged Dr. Moore's program

8   expertise, and the opinion of Dr. Moore generally supports the

9   RFC with the exception of the work schedule issue.  I note that

10  there is no requirement that all of the opinions of a medical

11  source, including Dr. Moore, be accepted or rejected.  It's not

12  an all or nothing, it's okay to give partial weight as long as

13  you explain why.

14         In this case, the residual functional capacity

15  limited plaintiff to simple routine repetitive tasks, low stress

16  environment, goal oriented, occasional contact with supervisors

17  and coworkers.  These adequately address Dr. Moore's

18  limitations.  In *Moxham v. Commissioner of Social Security*, 2018

19  WL 1175210 from the Northern District of New York, March of

20  2018, one of my colleagues, Magistrate Judge Daniel J. Stewart,

21  found similarly, and ironically, the opinion in that case was

22  also from Dr. Moore who found moderate to marked limitations in

23  dealing with stress, making appropriate work decisions, and

24  maintaining a regular schedule.  In that case, Judge Stewart

25  found that the plaintiff had failed to illustrate how those

1    mental limitations were not adequately accounted for in the

2    similar case involving simple tasks, simple instructions,

3    frequent interaction with supervisors, coworkers, and the

4    public, and decisions on simple work-related matters.

5            Similarly, in *Brian D. v. Saul*, 2020 WL 1187651, a

6    decision from the Northern District of New York in March of 2020

7    from Senior District Judge Lawrence E. Kahn, he concluded that a

8    statement by another consultative examiner, Dr. Slowik,

9    concerning plaintiff's ability to maintain a regular schedule

10   and appropriately deal with stress, being moderately to markedly

11   limited, was adequately accounted for in an RFC that limited the

12   plaintiff to a low stress job that required occasional

13   decisionmaking, occasional work judgments, and occasional

14   changes in the work setting.

15           I also find that Dr. Moore's opinions concerning

16   marked limitations in scheduling were properly rejected and

17   explained based on the, again, benign exams and the fact that

18   plaintiff did not have a history of missing appointments.  I

19   recognize that there are conflicting views on whether or not

20   that's a relevant consideration in this court.  The decision in

21   *Cook v. Astrue*, 2011 WL 2490996 from 2011, suggests that it is a

22   relevant consideration.

23           I acknowledge that *Virden v. Colvin*, a decision

24   relied on by the plaintiff, reported at 2015 WL 5598810, takes a

25   different view.  And certainly, one can argue that that is the

1    better view, but I nonetheless find that the Administrative Law

2    Judge properly rejected that portion of Dr. Moore's decision.

3    But, once again, even if it should have been considered, it was

4    adequately accommodated by the residual functional capacity.

5             Plaintiff also challenges the treatment of Dr.

6    Brown's opinion, a psychologist that appears in Exhibit 3A.  And

7    Dr. Brown finds moderate limitations in certain areas, including

8    the ability to perform activities within a schedule, maintain

9    regular attendance, and be punctual within customary tolerances,

10   but Dr. Brown, also in his mental RFC finding, concludes that

11   plaintiff retains the ability to meet the four basic demands for

12   unskilled work.  That opinion was given partial weight and not

13   heavily relied on, but only because the Administrative Law Judge

14   concluded that the plaintiff's condition was such that he was

15   more limited than reflected in Dr. Brown's opinion that Dr.

16   Brown -- Dr. Brown's opinion does support the residual

17   functional capacity finding.

18             And once again, because the RFC accommodated

19   plaintiff's situation by limiting him to performing within a

20   schedule and maintaining regular attendance, that was an

21   accommodated by the RFC.  Again, I cite *James N.*, which is a

22   case a cited earlier.

23             Turning to the new evidence argument, plaintiff

24   submitted two medical source statements, one from therapist

25   Matthew Scott and the second from Nurse Practitioner Jeannette

1    Lee, as well as additional treatment records.  The test for

2    other new materials to be accepted and the matter remanded is

3    that the records for new evidence must show a reasonable

4    probability that it would change the outcome.  The Appeals

5    Council in this case found that there was no such probability at

6    page two of the Administrative Transcript and, therefore, denied

7    review.

8           The opinion of the Appeals Council itself in refusing

9    to make a review based on the new evidence is not a final order

10   which this Court is empowered to review, *Cheeseman v. Berryhill*,

11   2018 WL 1033226 from the District of Vermont, February 2018,

12   *Lesterhuis v. Colvin*, 805 F.3d 83 from the Second Circuit 2015,

13   and *Davis v. Colvin*, 2016 WL 385183 from the Western District of

14   New York, January 31, 2016.  That doesn't mean that the new

15   evidence shouldn't be considered.  It is now part of the record

16   and properly considered when evaluating whether the RFC is

17   supported by substantial evidence.

18          In this case, the opinion of Therapist Scott at pages

19   34 and 35 show a marked limitation in maintaining regular

20   attendance and in performing within a schedule and finds that

21   plaintiff would be off task more than 20 percent and absent

22   three or more days per month.  In her questionnaire, Nurse

23   Practitioner Lee finds only a moderate limitation in the ability

24   to maintain regular attendance and perform activities within a

25   schedule.  One could argue that that is not inconsistent with

 1   the latter, with the residual functional capacity.  But in any

 2   event, these are checkbox forms with little or no explanation

 3   and most courts find them less useful when not well explained.

 4   They're also from two non-acceptable medical sources.  The ALJ

 5   rejected them and found no marked limitation in these areas.

 6            In my view, the new evidence does not alter the

 7   weight of the evidence.  It was plaintiff's burden to show that

 8   those treatment notes do not support the residual functional

 9   capacity and that burden was not met.

10            At step five, the determination at step five was

11   dependent on a residual functional capacity which was supported

12   by substantial evidence.  I note, moreover, that based on the

13   vocational expert's testimony, the step four determination by

14   the Administrative Law Judge where the plaintiff bears the

15   burden of proof is supported by substantial evidence.  But even

16   alternatively proceeding to step five where the Commissioner

17   does have the burden, I find that the vocational expert's

18   testimony was such that it satisfied the Commissioner's burden

19   of proof.  It was an opinion that there's work in the national

20   economy that plaintiff can perform notwithstanding his

21   limitations.  It was based on a hypothetical that mirrored the

22   residual functional capacity and, therefore, the Commissioner

23   met his burden at step five.

24            So in conclusion, I find that the correct legal

25   principles were applied and substantial evidence supports the

1    resulting determination.  I will award judgment on the pleadings

2    to the defendant and order dismissal of plaintiff's complaint.

3            Thank you both for excellent presentations.  This was

4    an extremely interesting case.  I hope you both stay safe in

5    these trying times.  Thank you.

6            MR. GORTON:  Thank you, your Honor.

7            MS. STEWART:  Thank you, your Honor.

8            (Time noted:  11:43 a.m.)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1
 2                    CERTIFICATE OF OFFICIAL REPORTER
 3
 4
 5           I, HANNAH F. CAVANAUGH, RPR, CRR, CSR, NYACR,
 6   NYRCR, Official U.S. Court Reporter, in and for the United
 7   States District Court for the Northern District of New York, DO
 8   HEREBY CERTIFY that pursuant to Section 753, Title 28, United
 9   States Code, that the foregoing is a true and correct transcript
10   of the stenographically reported proceedings held in the
11   above-entitled matter and that the transcript page format is in
12   conformance with the regulations of the Judicial Conference of
13   the United States.
14
15           Dated this 27th day of August, 2020.
16
17         X _Hannah F. Cavanaugh_____
18           HANNAH F. CAVANAUGH, RPR, CRR, CSR, NYACR, NYRCR
19           Official U.S. Court Reporter
20
21
22
23
24
25
```